UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DORA DIARHE,

                                                        Case No. 21 CV 3757

                       Plaintiff,          **COMPLAINT**

    -against-

OCEANVIEW NURSING & REHABILITATION
CENTER, LLC.

                       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff Dora Diarhe ("Plaintiff," "Diarhe," or "Mrs. Diarhe"), through her undersigned attorney, as and for her complaint against defendant Oceanview Nursing & Rehabilitation Center, LLC ("Oceanview" or "Defendant") alleges as follows:

## NATURE OF ACTION

1. This is an action under state and federal law for employment discrimination, retaliation, defamation, and unpaid wages. For 14 years, Mrs. Diarhe was a stellar employee at Oceanview, a nursing home in Far Rockaway, Queens. In February 2020, Diarhe complained that Cornell Murray, a janitor at Oceanview, was being abusive to her. She had suffered repeated instances of sexual harassment and harassment on account of her national origin, but this abuse was severe enough to cause her to complain. Instead of taking her complaint seriously, however, Annmarie Coombs of Oceanview's HR department conspired with Mr. Murray and his friends to accuse Mrs. Diarhe, the victim, of groping Mr. Murray. Oceanview fired Mrs. Diarhe after she refused to accede to these cooked-up allegations or to continue working in close proximity with her abuser.

2. Oceanview maintains video surveillance of its facilities in the regular course of business. When Mrs. Diarhe pointed out that Oceanview's video surveillance would confirm that she did not in fact grope Murray, and after the pulled videotape did in fact confirm this, Ms. Coombs persisted in trying to accuse Diarhe, a married woman, of groping Mr. Murray. Coombs insisted that Diarhe continue to work with Murray. When Diarhe refused, Oceanview fired her, and has refused to pay her last two days' wages or cash out her unused PTO.

3. After Diarhe was fired, Coombs continued to spread false rumors about Diarhe throughout the company. Among other things, Coombs told Oceanview employees that Diarhe, a married woman, had engaged in a consensual sexual relationship with Murray but was now "playing the victim" and that she had groped Murray on the job. These rumors are false, but they have tarnished Diarhe's reputation among her colleagues, including among colleagues that she thought she was close to. Coombs has continued to spread these defamatory statements even after a written demand for their retraction.

## THE PARTIES

4. Plaintiff Dora Diarhe resides in New York County, New York.

5. On information and belief, Defendant is a limited liability company organized under the laws of the State of New York. Defendant operates a licensed nursing home at 315 Beach 9th Street, Far Rockaway, NY 11691.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

7. Venue is proper in this Court and vicinage, because Plaintiff was employed by Defendant in Queens, County, and a substantial part of the events or omissions giving rise to her claims took place at the nursing home operated by Defendant at 315 Beach 9th Street, Far Rockaway, NY 11691.

**RIGHT TO SUE**

8. Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

9. Plaintiff received a Notice of Right to Sue from the EEOC, dated April 6, 2021, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

10. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

**FACTUAL ALLEGATIONS**

11. Defendant operates a licensed nursing home at 315 Beach 9th Street, Far Rockaway, NY 11691, with approximately 102 beds.

12. At all relevant times, Defendant has had more than 15 employees.

13. Most of the nurses at Oceanview are women.

14. Many of the staff at Oceanview are of Afro-Caribbean descent. Diarhe was one of few employees of African national origin. Diarhe is an immigrant from Nigeria.

15. Diarhe, and many of the other nurses, have experienced sexual harassment and discrimination at Oceanview.

16. Plaintiff Diarhe started working for Defendant in 2006 as a certified nursing assistant.

17. Diarhe was an excellent employee at Oceanview for 14 years.

18. In 2019, Diarhe obtained a practical nursing diploma.

19. At all relevant times, Oceanview had a culture of sexual harassment. Male employees routinely made inappropriate remarks about women's bodies and repeatedly touched and grabbed them in inappropriate ways. The culture at Oceanview was at times more hostile to Plaintiff Diarhe than to other women, because she was one of the few nurses of African national origin.

20. At all relevant times, Cornell Murray took part in this toxic culture. Murray made unwanted sexual advances to female coworkers, talked to and about them in sexual and inappropriate ways, and touched their bodies in inappropriate ways and without permission.

21. Murray engaged in each of these behaviors, including assault, against Mrs. Diarhe.

22. On information and belief, Murray's behavior was known to Oceanview management, both because word traveled quickly throughout Oceanview, and because multiple female employees complained about Murray. Although some male employees at Oceanview were occasionally disciplined for this kind of behavior, Murray was not. On information and belief, Murray was favored by Ms. Coombs, who used her managerial authority to quash complaints against her preferred employees.

23. On information and belief, Coombs had a pattern of victim-blaming, even when the harasser was not one of her favorites. For example, when one worker complained that her boss had grabbed her behind, Coombs told the worker that she had invited the assault by wearing tight pants.

24. Coombs also sought to blame the victim—Mrs. Diarhe—in this case.

25. Oceanview's investigative practices had the result of making it known to female employees that complaints would not be taken seriously, especially if they were against somebody who enjoyed the favor of Oceanview management.

26. Plaintiff Diarhe was a victim of sexual harassment by male employees at Oceanview, including Mr. Murray. Murray routinely commented on Diarhe's rear end, made inappropriate facial gestures when doing so, such as licking his lips, and talked about what he would do to Diarhe in a sexual manner. Murray also regularly harassed Diarhe on account of her national origin, calling her "African" and mocking her accent.

27. On February 10, 2020, Diarhe had an incident with Murray that prompted her to make a formal complaint about him. She was ultimately fired for refusing to back down from this complaint.

*February 10, 2020 Incident*

28. On February 10, 2020, Plaintiff Diarhe entered a room that Murray was cleaning, in order to administer care to a patient in that room. Upon her entering, Murray asked why she was there and, before she could answer, started shouting and cursing at Diarhe in a violent manner. He called her a "mother***ing a** b****" and yelled other abuse at her.

29. This was not the first time Murray verbally abused Diarhe.

30. The abuse on February 10 was extreme. It made Diarhe feel that she was going to have a stroke.

31. Feeling physical ill, Diarhe left the room and complained to administrative staff about the incident. She asked permission to leave early.

32. Oceanview initially refused this request and required Diarhe to undergo a medical examination. She was never given the results of the exam. On information and belief, however, Oceanview's tests showed a blood pressure of approximately 154/105, which is dangerously high.

33. Ms. Kelly Calamusa, the Director of Nursing at Oceanview, asked Diarhe to provide a written statement. Unable to remain in the workplace environment after the trauma of her abuse by Murray, Diarhe took home the form and returned with a written statement the following day, February 11.

34. On information and belief, Calamusa provided the statement to Annmarie Coombs. From the outset, however, Coombs orchestrated Oceanview's "investigation" of this matter in a manner designed to protect Murray and to punish Diarhe for having complained.

35. On February 12, 2020, Diarhe was called into Coombs's office, and Coombs told Diarhe that her written statement was "not corroborated" by the two witnesses identified in her statement and asked if Diarhe wanted to change her statement. Diarhe refused to change her statement.

36. On information and belief, Coombs's statement that Diarhe's statement was "not corroborated" was misleading at best. Coombs had pressured both witnesses to deny Diarhe's statement, but only one of these witnesses succumbed to Coombs's pressure.

37. Coombs nonetheless made the accusation during the February 12 meeting that it was in fact Diarhe who had harassed Murray, her abuser. Coombs told Diarhe that "three witnesses" had seen Diarhe "grope" Murray on the same day that he had been verbally abusive to Diarhe. Oceanview has not disclosed who these alleged witnesses were or what they claimed to have seen.

38. During the February 12 meeting, Diarhe pointed out that Oceanview could check surveillance footage to see who was telling the truth. Ignoring this evidence, Coombs proceeded to demand that Diarhe sign a statement saying she would work with Murray. Diarhe refused.

39. On February 13, 2020, Coombs called Diarhe in again. Murray was also present. At the beginning of this meeting, Coombs seized Diarhe's cellphone and threatened her with legal action if she recorded the meeting.

40. Coombs proceeded to play videotape that had been retrieved from Oceanview's surveillance footage. The videotape showed no physical contact between Murray and Diarhe on February 10. A union representative present at the meeting agreed that the video showed no physical contact between Murray and Diarhe.

41. Ignoring this plain evidence, Coombs again demanded that Diarhe agree to work with her abuser. Coombs gave an ultimatum that Diarhe would have to learn to work together with her abuser or that both of them would be fired. Diarhe refused and asked to be separated from Murray while Oceanview's investigation was ongoing.

42. During the February 13 meeting, however, Coombs made it clear that she was trying to close Diarhe's complaint, not investigate it. When Diarhe referred to the videotape evidence, Coombs threatened that she would *get other people* to corroborate Murray's allegations and stated that she did not need to watch any other "d*** tapes."

43. Coombs threatened to report Diarhe to law enforcement for groping Murray if Diarhe refused to go along with the investigation outcome that Coombs was trying to engineer. Diarhe refused to continue working with her abuser.

44. On February 14, 2020, Diarhe tried to speak with Coombs to reiterate her request that she be separated from Murray in the interim. Unable to reach Coombs, Diarhe spoke with Kelly Calamusa, who agreed to put Diarhe in a separate wing from Murray.

45. When Diarhe showed up for work the morning of February 16, however, she learned that she was assigned to work in the same wing as Murray, despite her requests. At Diarhe's request, the night supervisor, still on duty in the early morning, called Calamusa, who was on vacation in Florida. Calamusa confirmed that Diarhe should be placed in a separate wing from Murray.

46. During the day on February 16, Coombs called Diarhe in and again threatened that she would call the police if Diarhe refused to sign a paper agreeing to work with Murray. Diarhe refused and asked if she could bring home a copy of the paper she was being asked to sign. Coombs refused and told Diarhe to return to her office at 3 p.m. Diarhe could not return at that time, because she had to report for a shift at another workplace.

47. On February 17, Coombs called Diarhe into her office again, and again tried to pressure her into signing a document which Diarhe did not agree with and which Coombs did not permit Diarhe to review at home or keep a copy of. When Diarhe refused to sign the document, Coombs informed her that she was suspended without pay. Coombs called Oceanview's scheduler and told her to have Diarhe taken off the schedule and gave Diarhe a "Written Warning Notice."

48. On information and belief, Coombs has cemented her retaliation against Diarhe by continuing to spread rumors about Diarhe well after suspending her. Coombs has spread rumors throughout Oceanview staff that Diarhe had engaged in a consensual sexual relationship with Murray, that Diarhe was now "playing the victim" but in fact had groped Murray before

complaining about his abuse of her, and that Oceanview had disciplined Diarhe for sexual misconduct.

49. These false rumors are slanderous per se. They impute unchastity to a married woman.

50. These false rumors have damaged Diarhe's reputation among her friends and former coworkers.

51. These false rumors have also compounded the emotional distress that Diarhe has suffered as a direct result of Oceanview's conduct.

52. Oceanview has refused multiple requests by Diarhe to pay her last two days' work before suspension.

53. Oceanview has not paid Diarhe's unused PTO.

54. Diarhe has, through counsel, made multiple demands on Oceanview since as early as March 2020 for Oceanview to preserve relevant documents (including video), conduct an independent investigation of this matter, pay her unpaid wages, and to retract Coombs's defamatory statements about her.

55. Oceanview has persisted in refusing to pay Diarhe her unpaid wages, and continued to publish defamatory statements about Diarhe well after her demand for a retraction.

56. On information and belief, Oceanview's conduct has been malicious, wanton, and reckless, exhibiting a willful disregard for Plaintiff's rights.

## JURY DEMAND

57. Plaintiff demands a trial by jury on all claims so triable pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination in Violation of Title VII)

58. Plaintiff realleges and incorporates by reference the allegations set forth in the numbered paragraphs above as if fully set forth herein.

59. At all relevant times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*.

60. At all relevant times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*.

61. As described above, Oceanview discriminated against Diarhe on the basis of her sex, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, willfully refusing to investigate, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Diarhe based on her sex, attempting to force her to work in proximity with a man who had sexually harassed and assaulted her, and refusing to address the culture of sexual harassment prevalent at Oceanview.

62. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Diarhe has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

63. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Diarhe has suffered economic damages, including lost wages and benefits.

64. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (Retaliation in Violation of Title VII)

65. Plaintiff realleges and incorporates by reference the allegations set forth in the numbered paragraphs above as if fully set forth herein.

66. As described above, Oceanview retaliated and discriminated against Diarhe for her opposition to Oceanview's discriminatory practices, including, but not limited to, the fostering of a hostile work environment and Oceanview's handling of her complaint, in violation of 42 U.S.C. § 2000e-3.

67. Oceanview retaliated against Diarhe for her opposition to these discriminatory practices by, among other things, engineering false allegations that she had engaged in a consensual relationship with her abuser and that she had assaulted him, threatening to press criminal charges against her on this false basis, spreading rumors about her within the company, trying to force her to work in close proximity with her abuser if she refused to accede to Oceanview's false allegations, and firing her when she refused to do so.

68. As a result of the unlawful retaliatory conduct of Defendant in violation of Title VII, Diarhe has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

69. As a result of the unlawful retaliatory conduct of Defendant in violation of Title VII, Diarhe has suffered economic damages, including lost wages and benefits.

70. The unlawful retaliatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination in Violation of the New York State Executive Law)

71. Plaintiff realleges and incorporates by reference the allegations set forth in the numbered paragraphs above as if fully set forth herein.

72. At all relevant times, Defendant was an employer within the meaning of the New York State Human Rights Law ("NYSHRL"), Executive Law § 290 et seq.

73. At all relevant times, Plaintiff was an employee within the meaning of the NYSHRL, Executive Law § 290 et seq.

74. As described above, Oceanview discriminated against Diarhe on the basis of her sex, in violation of the NYSHRL, by creating, fostering, condoning, accepting, ratifying, willfully refusing to investigate, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Diarhe based on her sex, attempting to force her to work in proximity with a man who had sexually harassed and assaulted her, and refusing to address the culture of sexual harassment prevalent at Oceanview.

75. As a result of the unlawful discriminatory conduct of Defendant in violation of the NYSHRL, Diarhe has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

76. As a result of the unlawful discriminatory conduct of Defendant in violation of the NYSHRL, Diarhe has suffered economic damages, including lost wages and benefits.

77. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT
**(Retaliation in Violation of the New York State Executive Law)**

78. Plaintiff realleges and incorporates by reference the allegations set forth in the numbered paragraphs above as if fully set forth herein.

79. As described above, Oceanview retaliated and discriminated against Diarhe for her opposition to Oceanview's discriminatory practices, including, but not limited to, the fostering of a hostile work environment and Oceanview's handling of her complaint, in violation of the NYSHRL, Executive Law § 296.

80. Oceanview retaliated against Diarhe for her opposition to these discriminatory practices by, among other things, engineering false allegations that she had engaged in a consensual relationship with her abuser and that she had assaulted him, threatening to press criminal charges against her on this false basis, spreading rumors about her within the company, trying to force her to work in close proximity with her abuser if she refused to accede to Oceanview's false allegations, and firing her when she refused to do so.

81. As a result of the unlawful retaliatory conduct of Defendant in violation of the NYSHRL, Diarhe has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

82. As a result of the unlawful retaliatory conduct of Defendant in violation of the NYSHRL, Diarhe has suffered economic damages, including lost wages and benefits.

83. The unlawful retaliatory actions of Defendant constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT
**(Discrimination in Violation of the New York City Human Rights Law)**

84. Plaintiff realleges and incorporates by reference the allegations set forth in the numbered paragraphs above as if fully set forth herein.

85. At all relevant times, Defendant has met the definition of a covered entity within the meaning of the N.Y.C. Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL").

86. As described above, Oceanview discriminated against Diarhe on the basis of her sex, in violation of the NYCHRL, by creating, fostering, condoning, accepting, ratifying, willfully refusing to investigate, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Diarhe based on her sex, attempting to force her to work in proximity with a man who had sexually harassed and assaulted her, and refusing to address the culture of sexual harassment prevalent at Oceanview.

87. As a result of the unlawful discriminatory conduct of Defendant in violation of the NYCHRL, Diarhe has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

88. As a result of the unlawful discriminatory conduct of Defendant in violation of the NYCHRL, Diarhe has suffered economic damages, including lost wages and benefits.

89. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (Retaliation in Violation of the New York City Human Rights Law)

90. Plaintiff realleges and incorporates by reference the allegations set forth in the numbered paragraphs above as if fully set forth herein.

91. As described above, Oceanview retaliated and discriminated against Diarhe for her opposition to Oceanview's discriminatory practices, including, but not limited to, the fostering of a hostile work environment and Oceanview's handling of her complaint, in violation of § 8-107 of the NYCHRL.

92. As described above, Oceanview attempted to coerce, intimidate, threaten or interfere with Diarhe's enjoyment of rights granted or protected under the NYCHRL, in violation of the § 8-107(19) of the NYCHRL.

93. Oceanview retaliated against Diarhe for her opposition to these discriminatory practices by, among other things, engineering false allegations that she had engaged in a consensual relationship with her abuser and that she had assaulted him, threatening to press criminal charges against her on this false basis, spreading rumors about her within the company, trying to force her to work in close proximity with her abuser if she refused to accede to Oceanview's false allegations, and firing her when she refused to do so.

94. As a result of the unlawful retaliatory conduct of Defendant in violation of the NYCHRL, Diarhe has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

95. As a result of the unlawful retaliatory conduct of Defendant in violation of the NYCHRL, Diarhe has suffered economic damages, including lost wages and benefits.

96. The unlawful retaliatory actions of Defendant constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION AGAINST DEFENDANT
(Defamation)

97. Plaintiff realleges and incorporates by reference the allegations set forth in the number paragraphs above as if fully set forth herein.

98. Oceanview provided false, misleading and defamatory statements of fact about Diarhe to her colleagues and former coworkers.

99. These statements are slanderous per se, as they impute unchastity to Diarhe.

100. No valid privilege applied to Oceanview's publication of these defamatory statements.

101. Oceanview's defamatory statements have damaged her reputation and deprived her of her friendly intercourse in society.

102. Oceanview's publication of these defamatory statements was wanton, malicious, and willful, warranting the imposition of punitive damages.

### EIGHTH CAUSE OF ACTION AGAINST DEFENDANT
(Unpaid Wages; New York Labor Law Violations)

103. Plaintiff realleges and incorporates by reference the allegations set forth in the number paragraphs above as if fully set forth herein.

104. As described above, Oceanview has failed to pay Diarhe for time worked on at least her last two days of work.

105. As described above, Oceanview has failed to compensate Diarhe for her unused vacation time and other accrued paid time off ("PTO") at the time of the termination of her employment.

106. This unpaid PTO constitutes a benefit or wage supplement within the meaning of the Labor Law

107. Oceanview's conduct violates the Labor Law, including Labor Law §§ 191(3) and 198.

108. Plaintiff is entitled to an award of damages for unpaid wages and unpaid benefits or wage supplements, liquidated interest, and reasonable attorney's fees pursuant to New York Labor Law § 198(1-a)

109. On information and belief, Defendant failed to provide Plaintiff with the notices required by New York Labor Law § 195(1). Accordingly, Plaintiff is entitled to recover fifty dollars for each work day that the violations occurred, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees pursuant to New York Labor Law § 198(1-b)

110. On information and belief, Defendant failed to provide Plaintiff with the notices required by New York Labor Law § 195(3). Accordingly, Plaintiff is entitled to recover two hundred fifty dollars for each work day that the violations occurred, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees pursuant to New York Labor Law § 198(1-d)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Diarhe demands the following relief from Defendant:

A.     An award of compensatory, statutory, and liquidated damages from Defendant in an amount to be determined at trial;

B.     An award of punitive damages from Defendant for their intentional and malicious misconduct in an amount to be determined at trial;

C.     An award of attorneys' fees, interest and costs, in an amount to be determined at trial; and

D.     Such other and further relief as the Court deems just, proper and equitable.

Dated:    July 2, 2020  
            Long Island City, NY

The Law Offices of Scott Caplan, P.C.  
By:   /s/ Scott Charles Caplan  
      Scott Charles Caplan

34-18 Northern Blvd., Ste. B28  
Long Island City, NY 11101  
(929) 344-5545  
scott@scottcaplanlaw.com

*Attorney for Plaintiff Dora Diarhe*